IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| KIRELL F. BETTIS-TAYLOR,<br><br>         Plaintiff,<br>v.<br><br>INTERNAL REVENUE SERVICE,<br><br>         Defendant. | REPORT AND RECOMMENDATION<br><br>Case No. 1:21-cv-22 HCN<br><br>District Judge Howard C. Nielson<br><br>Chief Magistrate Judge Dustin B. Pead |

This matter is before the court on a number of pending motions. Plaintiff moves the court to reconsider its denial of his motion for appointment of counsel. (ECF No. 9.) Plaintiff also filed motions for, Service of Process (ECF No. 16.), to Proceed In Forma Pauperis although Plaintiff already paid the filing fee for this case (ECF No. 17.), and most recently, a motion for Permission to Serve a Summons. (ECF No. 29.) Defendant moves the court to dismiss this case, and to substitute the United States as the named defendant for Plaintiff's tax-refund claim. (ECF No. 19.) For the reasons set forth herein, the undersigned recommends that this case be dismissed.

BACKGROUND

Plaintiff's Complaint presents an interesting story, which sounds like a sequel to the 2004 thriller National Treasure that starred Nicolas Cage. In 1997, at Mammoth Ski Resort in California, Plaintiff discovered four metal trunks of gold bars. Each trunk "consisted of one thousand gold bars and some silver bars." (ECF No. 1 ¶ 4.) Among the items in the trunks, were several ancient documents including one entitled "floating irrevocable letter of credit" from California governor William Irwin, dated April 4, 1878. *Id.* The letter invited whomever found it to establish a trust for the benefit of the U.S. Treasury and California. It instructed the grantor of

this future trust to inscribe the trust's name on the document and then sign it on behalf of the California governor. By following these instructions the trust would receive $850 billion in credit from the state of California.

Of course Plaintiff followed these instructions to the tee, and created the Kirell Francis Bettis Trust. *Id.* ¶ 8. The State of California and the U.S. Treasury are beneficiaries of the trust. Over a decade later, in 2014, Plaintiff converted the $850 billion of credit into "original issue discount" (OID) imputed interest taxable income. *Id.* ¶ 11. From 2014 through 2019, the trust received hundreds of billions of dollars in OID interest income. The trust retained most of this income for the benefit of California and the U.S. Treasury. Plaintiff, however, was paid $20,508,703,741 in fiduciary fees and wages between 2015 and 2018.

In 2019, clearly in an effort to comply with the law, Plaintiff paid the IRS $323,251,682,600 in "one-of-a-kind" bills of exchange he created in December 2018. *Id.* ¶ 24. Of this amount, $302,742,978,859 was for the trust's 2014–2019 income, and the remaining $20,508,703,741 was for Bettis' own wages and fiduciary fees as trustee. (Id. ¶ 24.) Mr. Bettis also filed federal tax returns for himself and the trust, covering tax years 2014–2019. Yet, the IRS employees refused to process the tax returns and are sitting on the $323,251,682,600.

Given this backdrop, Plaintiff seeks relief from the court as follows: 1) Order the IRS to return the approximate $300 billion to the trust and then order the trust to pay out $151 billion to the State of California and $151 billion to the US Treasury; *Id.* p. 26. 2) Order the IRS to process his federal tax returns and refund whatever portion of the $20,508,703,741.00 that was an overpayment; *Id.* 3) Order the IRS to turn over documentation showing Plaintiff is a billionaire; and, 4) Award Plaintiff damages based on the mishandling of his tax returns.

As noted by Defendant, the remedies sought by Plaintiff, when broadly construed, appear to be two requests for a tax-refund claim under 26 U.S.C. § 7422, a request for injunctive relief, a Freedom of Information Act claim for IRS records that demonstrate Plaintiff is a billionaire, and a claim for damages under 26 U.S.C. § 7433 for "recklessly or intentionally" or negligently, collecting a federal tax.

DISCUSSION

While somewhat entertaining, Plaintiff's tall tale of treasure chests, gold bars, ancient documents, and billions of dollars, is not that unique for Plaintiff. Mr. Bettis is no stranger to litigation. In fact, multiple courts have barred Mr. Bettis from filing a suit *in forma pauperis*. See *Taylor v. California Dep't of Corr.*, 2015 WL 11181721, at *1 (E.D. Cal. Mar. 27, 2015) (denying Mr. Bettis motion to reinstate *in forma pauperis* status), aff'd sub nom. *Taylor v. California Dep't of Corr. & Rehab.*, 623 F. App'x 488, 2015 WL 7689021 (9th Cir. 2015).

Mr. Bettis also already filed two nearly identical lawsuits in the Court of Federal Claims seeking huge tax refunds. In *Bettis v. United States*, 2017 WL 6336778 (Fed. Cl. Dec. 12, 2017), Mr. Bettis sought a refund of an alleged $1,208,796,038 overpayment of payroll and income taxes for the 2015 year. He alleged owning a "financial instrument worth $850 billion, from which he derives an annual fiduciary fee of $5,162,202,116. The 'asset' [being] a 'Floating Irrevocable Letter of Credit' issued by the State of California on April 4, 1878." *Id.* at *1. The court dismissed the case, finding the instrument "entirely frivolous" and Mr. Bettis' claims fantastic and delusional. *Id.* at *6.

Three years later, Mr. Bettis appearing pro se, filed another suit seeking a tax refund of billions of dollars for various entities and an award of six billion dollars for the fiduciary Kirell F. Taylor. See *Taylor v. United States*, 2020 WL 6598286 (Fed. Cl. Oct. 20, 2020). This time, the

court dismissed the case for a failure to pay the filing fee, finding that Mr. Bettis had exceeded the three strikes allowed under 28 U.S.C. § 1915(g). The court further noted that Mr. Bettis' case was based on an alleged instrument that is frivolous and without value, and he never paid the alleged taxes.

It appears that Mr. Bettis, having lost twice in the Court of Federal Claims, now refiled here in the District of Utah. Yet, once again Mr. Bettis' case has a multitude of fatal flaws.

Mr. Bettis has failed to properly serve the Complaint within the required time frame under Federal Rule 4(m). Rule 4(m) provides that if a "defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Service on the United States requires a party to deliver a copy of the summons and the complaint to 1) the local U.S. Attorney or their designee, and 2) the Attorney General of the United States at Washington, D.C. Id. 4(i). In addition, if the defendant is a federal agency, such as in this case, then the plaintiff must serve the United States and mail the summons and complaint to the agency as well. Id. 4(i)(2).

Plaintiff filed his Complaint on February 22, 2021. Thus, Mr. Bettis had until May 24, 2021 to effectuate service.[1] According to the Return of Service, Mr. Bettis only mailed the complaint to the IRS. (ECF No. 5.) This failed to comply with the requirements of Rule 4.

Mr. Bettis has filed two motions for service. First, on April 29, 2021, Plaintiff filed a request for service by the U.S. Marshals. (ECF No. 16.) This motion fails, however, because Mr. Bettis is not proceeding *in forma pauperis* under 28 U.S.C. § 1915. Indeed, given the rulings of

---

[1] Mr. Bettis' 90 days expired on May 23, 2021. That day, however, was a Sunday, making the next business day, Monday, the final day for service.

other courts, proceeding under § 1915 is not permissible for Mr. Bettis due to his frivolous filings.[2] On July 14, 2021, Plaintiff moved the court for permission to serve a summons and amended pleading on the Treasurer of the United States under the "Trading with the Enemy Act at 50 U.S.C. sections 4316 and 4309." Mtn p. 1, ECF No. 29. Even if the court were to grant this motion, Mr. Bettis would still fail to comply with Rule 4. Thus, Mr. Bettis fails to bring any proper motion for service, and he has not met the requirements for Rule 4.

In *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995), the Tenth Circuit provided guidance on how to handle a failure by a plaintiff to comply with Rule 4. The court provided:

> The preliminary inquiry to be made under Rule 4(m) is whether the plaintiff has shown good cause for the failure to timely effect service. In this regard, district courts should continue to follow the cases in this circuit that have guided that inquiry. If good cause is shown, the plaintiff is entitled to a mandatory extension of time. If the plaintiff fails to show good cause, the district court must still consider whether a permissive extension of time may be warranted. At that point the district court may in its discretion either dismiss the case without prejudice or extend the time for service.

*Id.*

Here, Plaintiff has not shown good cause for his failure to timely effect service. Moreover, the court finds a permissive extension of time is not warranted. Seeking to bring claims based on a frivolous document and frivolous financial instruments, does not warrant a discussion of a fanciful statute of limitations. In addition, there are no policy considerations weighing in favor of granting a permissive extension. The court therefore should dismiss Mr. Bettis' case without prejudice under Rule 4. Although before closing with that recommendation, the court notes that even if service were proper, this case would be subject to dismissal under a

---

[2] Mr. Bettis filed a Motion for Leave to Proceed *in forma pauperis*. (ECF No. 17.) The court is not persuaded by this motion because Plaintiff already paid the filing fee, and more importantly, Plaintiff's motion is improper under 28 U.S.C. 1915(g).

number of different theories set out by Defendant. Chief among these, is the fact that Mr. Bettis' claims "rise to the level of the irrational or the wholly incredible." *Blakely v. USAA Cas. Ins. Co.*, 633 F.3d 944, 950 (10th Cir. 2011). And, a complaint setting forth "fantastic" or "delusional" claims is ripe for dismissal under Rule 12(b)(6). *Id.*

### RECOMMENDATION

Based upon the foregoing, the undersigned recommends that this matter be dismissed without prejudice for a failure to properly serve Defendant. The remaining motions may be deemed moot.

Copies of the foregoing Report and Recommendation are being sent to all parties who are hereby notified of their right to object. Within fourteen (14) days of being served with a copy, any party may serve and file written objections. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 19 July 2021.

_____
Dustin B. Pead
United States Magistrate Judge